UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WINSTON MARSHALL,

       Plaintiff,

v.                        CASE No. 8:20-cv-1053-TGW

KILOLO KIJAKAZI, Acting
Commissioner of Social Security.

---

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

### I.

The plaintiff, who was fifty-four years old at the time of the administrative hearing and who has a high school education, has worked as a security guard (Tr. 28, 44, 72).  He filed a claim for Social Security

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

disability benefits, alleging that he became disabled due to a stroke (Tr. 72). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "cerebral infarction, right para-opthalmic aneurysm, right homonymous hemianopsia, degenerative joint disease of the left shoulder, and bilateral hearing loss and tinnitus" (Tr. 21). She found further that "there is insufficient evidence of clinically discernable, longitudinal signs or symptoms associated with the claimant's cardiomyopathy, chronic kidney disease, or polysubstance use" and, therefore, those impairments are nonsevere (Tr. 22). The law judge concluded that, with these impairments, the plaintiff had the residual functional capacity (Tr. 23):

> to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for six hours in an eight-hour workday. He can frequently stoop, climb ramps, and climb stairs, but he can never climb ladders, ropes, or scaffolds, and he must avoid all exposure to workplace hazards. The claimant can tolerate no more than a moderate noise environment. He can never reach overhead with his non-dominant left upper extremity, but he can frequently reach in all other directions with his left upper extremity.

2

The law judge determined, based on the testimony of a vocational expert, that with those limitations the plaintiff could perform past relevant work as a security guard (Tr. 28). Alternatively, the law judge found, based on the vocational expert's testimony, that other jobs existed in significant numbers in the national economy that the plaintiff could perform, such as cashier II, cleaner/housekeeping, and photocopying machine operator (Tr. 29–30). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 30).

The plaintiff sought review of the law judge's decision and submitted additional evidence with that request (see Tr. 1–3). That evidence consisted of two letters from Department of Veterans Affairs physician Dexter Frederick (Tr. 11, 12). The Appeals Council determined that the first letter "does not show a reasonable probability that it would change the outcome of the decision" (Tr. 2). It found that the second letter, dated October 8, 2019, "does not relate to the period at issue," which was April 17, 2017, to April 30, 2019 (id.). Consequently, the Appeals Council denied the plaintiff's request for review and the law judge's decision became

the final decision of the Commissioner of Social Security in the plaintiff's case (Tr. 1).[2]

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[2]The plaintiff filed a subsequent application on April 20, 2020, and was awarded benefits with an onset date of May 29, 2019 (Doc. 28, p. 8, n.5).

Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   However, the court, in its review, must satisfy itself that

5

the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff presents two arguments: He contends that "new and material evidence submitted to the Appeals Council warrants remand," and that the law judge "failed to properly consider [the plaintiff's] combination of impairments and subjective complaints" (Doc. 28, p. 3) (emphasis omitted).  Neither contention is meritorious.

A.   Following the law judge's unfavorable decision, the plaintiff requested review from the Appeals Council and submitted additional evidence to it.   The plaintiff submitted two letters from his treating physician, Dr. Dexter Frederick, who opined that the plaintiff cannot work due to his medical conditions (Tr. 11, 12).

The plaintiff argues that "[b]oth of Dr. Frederick's letters constitute new evidence, which would have reasonably changed the ALJ decision" (Doc. 28, p. 9).  In support of this argument, the plaintiff cites to an outdated (and miscited) regulation, 20 CFR 416.1470, and legal authority interpreting that outdated standard, Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007) (see id., pp. 8–9).

6

Ingram holds that when the Appeals Council considers new evidence and denies review, the district court should determine whether the Appeals Council has correctly decided that the law judge's findings are not contrary to the weight of all the evidence. Id. at 1266–67. This holding, however, was based on the language of 20 C.F.R. 404.970(b), see id., which has since been amended.  20 C.F.R. 404.970(a)(5).

Under the applicable regulations, review will be granted by the Appeals Council when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." Id.   Additionally, the plaintiff must state good cause for not previously submitting the evidence to the law judge. 404.970(b).

The plaintiff, therefore, under the regulations must show that (1) the evidence relates to the period on, or before, the date of the law judge's decision, (2) the evidence is new, (3) the evidence is material, (4) there is a reasonable probability that the additional evidence would change the outcome of the decision and (5) there is good cause for not submitting the evidence earlier.

7

Evidence is material if there is a "reasonable possibility" that it would change the administrative result. Hargress v. Social Security Administration, Commissioner, 883 F.3d 1302, 1310 (11th Cir. 2018); see also Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987) ("material" means "relevant and probative so that there is a reasonable possibility that it would change the administrative result").

Dr. Frederick opined in the first letter that, due to the plaintiff's health conditions, including a stroke and aneurysm in April 2017, the plaintiff "fits the criteria" of being disabled and is unemployable (Tr. 12). Additionally, Dr. Frederick mentions that the plaintiff attempted to work after the stroke, but "fell out on the job" (id.).

The Appeals Council considered this evidence and stated (Tr. 2):

> You submitted medical evidence from the Department of Veteran Affairs (1 page undated). We find this evidence does not show a reasonable probability that it would change the outcome of the decision.

The plaintiff argues that the Appeals Council erred by "not considering" the letter on the grounds that it is undated (Doc. 28, p. 7). He elaborates that it was "received at the Appeals Council on May 28, 2019,"

and that "the date was under a sticker attached [by the plaintiff] to the top right corner of the letter" (id.). This argument is baseless. Although the Appeals Council mentioned that the letter was undated in identifying the evidence, it rejected the letter because it "does not show a reasonable probability that it would change the outcome of the decision" (Tr. 2). Thus, the Appeals Council considered this evidence on its merits and, therefore, this argument fails.

The plaintiff argues further that the Appeals Council erred by not granting review because the letter would have "reasonably changed the ALJ['s] decision" (Doc. 28, p. 9). However, "reasonably changed" is not the standard. Furthermore, the plaintiff fails to show that there is a "reasonable probability" that the letter would have changed the law judge's decision.

The plaintiff asserts that the law judge would find the letter "significant because it documents that [the plaintiff] tried to go back to work in 2017 but unfortunately he fell out on the job" (id., pp. 6–7). This argument is unavailing because it is cumulative of other evidence in the record, and it is not even a medical opinion, as it simply repeats what Dr. Frederick was told.

9

The plaintiff also focuses on Dr. Frederick's assertion that the plaintiff "is no longer capable of holding down a job" (id., p. 7). However, there is not a reasonable probability that this evidence would change the law judge's decision, either.

Initially, it is noted that the law judge, in accordance with the applicable regulations, stated that she "[does] not defer or give any specific evidentiary weight, including controlling weight, to any ... medical opinions" (Tr. 26). Thus, Dr. Frederick's letter is not entitled to special significance simply because it came from a treating physician.

Furthermore, Dr. Frederick's assertion that the plaintiff is unable to work is not a medical opinion, but rather a "statement[] on an issue reserved to the Commissioner." 20 C.F.R. 404.1520b(c)(3)(i). Notably, the regulation specifies that such statements are "inherently neither valuable nor persuasive," and the law judge is not required to even comment on that evidence in the decision. 20 C.F.R. 404.1520b(c).

Moreover, the basis for Dr. Frederick's assertion of disability is conclusory. He attributes the plaintiff's disability to a "well-document[ed] medical history," including a stroke and an aneurysm in April 2017 (Tr. 12). However, a list of diagnoses does not show that the plaintiff's impairments

are disabling. See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient [to show disability]; instead, the plaintiff must show the effect of the impairment on her ability to work."). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). However, Dr. Frederick's letter does not opine on the plaintiff's specific functional limitations, much less identify objective medical findings supporting any such limitation.

Notably, the law judge rejected an August 2018 letter from Dr. Frederick that similarly opined the plaintiff could not work (Tr. 645). She explained that the opinion was unpersuasive partly due to "its failure to address the claimant's specific capabilities and limitations" (Tr. 28). Therefore, there is no basis to think that the law judge would conclude differently regarding this letter. Accordingly, the Appeals Council did not err in finding there was no reasonable probability that this letter would change the outcome of the law judge's decision.

11

Additionally, the plaintiff argues that the Appeals Council failed to consider a letter from Dr. Frederick dated October 8, 2019 (Doc. 28, p. 8). Dr. Frederick opined, among other things, that the plaintiff's "health has deteriorated somewhat due to a recent hospitalization where [the plaintiff] was diagnosed with a left frontoparietal stroke," and that the plaintiff "will need closer monitoring and intense rehabilitation" (Tr. 11). He also listed the plaintiff's then-current medical conditions (id.).

The Appeals Council responded (Tr. 2):

> You submitted medical evidence from Department of Veteran Affairs dated October 8, 2019 (2 pages). The Administrative Law Judge decided your case through April 30, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 30, 2019.

The plaintiff fails to show that the Appeals Council erred in its determination. Thus, the Appeals Council will not review evidence that does not "relate[] to the period on or before the date of the hearing decision." 20 C.F.R. 404.970(a)(5); see Griffin v. Commissioner of Social Security, 723 Fed. Appx. 855, 857–58 (11th Cir. 2018). Since Dr. Frederick's October 2019 letter postdates the law judge's decision by several months and

discusses the treatment and prognosis for a stroke that the plaintiff experienced in September 2019, more than four months after the law judge's decision, it is not chronologically relevant.

The plaintiff argues that the October 2019 letter relates to the pertinent time period because the plaintiff's "second stroke was in fact evidence of his worsening condition" (Doc. 28, p. 9).    However, "[e]vidence of deterioration of a previously-considered condition ... is not probative of whether a person is disabled during the specific period under review."   Enix v. Commissioner of Social Security, 461 Fed. Appx. 861, 863 (11th Cir. 2012).

The Eleventh Circuit elaborated on evidence postdating a law judge's decision in Griffin v. Commissioner of Social Security, supra, 723 Fed. Appx. at 858:

> This Court has recognized that in specific circumstances, "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." Washington, 806 F.3d at 1322-23. In Washington, these "specific circumstances" existed when the record showed that the medical opinion was based on a review of the claimant's medical history and the claimant's report of his symptoms during the relevant time period and there was no evidence of a decline in the claimant's condition following the

ALJ's decision. Id.; see also Hearings, Appeals, and Litigation Law Manual for the Social Security Administration, ("HALLEX") I-3-3-6(B)(2) n.1 (explaining that "a statement may relate to the period" at issue "when it postdates the decision but makes a direct reference to the time period adjudicated [by the ALJ]"). While evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, it is not probative of whether the claimant was disabled during the relevant time period under review. See Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999); see also HALLEX I-3-3-6 (B)(2) (providing as an example of evidence that is not related to the period at issue evidence of "a worsening of the condition or onset of a new condition after the date of the [ALJ's] decision").

See also Thornton v. Commissioner, Social Security Administration, 597 Fed. Appx. 604, 615 (11th Cir. 2015); Banks for Hunter v. Commissioner, Social Security Administration, 686 Fed. Appx. 706, 709 (11th Cir. 2017).

Dr. Frederick discusses in the October 2019 letter that the plaintiff's health has "deteriorated" and "worsened" due to a stroke in September 2019 (Tr. 11). Thus, Dr. Frederick describes that the plaintiff's health worsened after the law judge's decision and, therefore, the October 2019 letter is not chronologically relevant. See Griffin v. Commissioner of

Social Security, supra, 723 Fed. Appx. at 858; Thornton v. Commissioner,

Social Security Administration, supra, 597 Fed. Appx. at 615.

Finally, the plaintiff makes the conclusory assertion that the

October 2019 letter

> is evidence that Dr. Frederick's blanket opinion [in
> August 2018] that [the plaintiff] could not work at
> all in any capacity was valid.  In short, working
> in Dr. Frederick's opinion was dangerous to his
> overall health.  Dr. Frederick's opinion turned
> out to be accurate.

(Doc. 28, p. 8).  This argument is meritless.  Since this letter does not

reflect the plaintiff's condition and his functional abilities on or before the

date of the law judge's decision, the assertion that it was dangerous for him

to work during the pertinent time period is pure speculation.

In sum, because Dr. Frederick's October 2019 letter is not

chronologically relevant, the Appeals Council did not err in refusing to

consider it.  See 20 C.F.R. 404.970(a)(5).

B.    The plaintiff's second argument is that the law judge's

credibility determination is flawed.  He contends that the law judge's

"reasons for rejecting [his] subjective complaints were both factually

incorrect and legally insufficient" (Doc. 28, p. 11), and "[h]ad the ALJ

15

properly credited his subjective complaints of severe fatigue, side effects of medications, and dizziness ... the ALJ would not have determined [the plaintiff] could perform any work much less light work" (id., p. 10). This argument is unavailing.

It is well-established that the responsibility for credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). Consequently, to overturn the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels the contrary finding. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d at 1210. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge

determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n. 6 (11th Cir.1985).

The law judge recognized the need to articulate a credibility determination (Tr. 23). She referred to the pertinent regulations and the Social Security Ruling governing such determinations (id.). This demonstrates that she appropriately applied the Eleventh Circuit pain standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

Furthermore, the law judge discussed, in detail, the plaintiff's subjective complaints (Tr. 24):

> The claimant feels he is unable to work because of a combination of impairments, including ringing in both ears, but mostly relating to a stroke he had in April 2017 that resulted in symptoms like fatigue, cognitive issues, shortness of breath, and balance problems (Exhibits 4E/2, 9E/2, 10E/1, 12E/2, and Hearing Testimony). He alleged the anticoagulant medications he has to take now make him nauseated, dizzy and sleepy, in addition to causing dry mouth and bowel issues (Exhibit 10E/1). He testified he fatigues quickly after about 10 minutes of activity, and he experiences shortness of breath while he is trying to perform

basic household chores. The claimant indicated he has used a cane every day for the last two years to help him with balance when he leaves his home because he has dizzy spells (Hearing Testimony). He said he tried to return to work in January 2018, but he experienced dizzy spells and fell twice while coming out of the bathroom (Id.). The claimant testified his stroke caused problems with memory, attention, and concentration, his medication causes the room to spin when he gets out of bed in the morning, and he has fatigue so intense that he has to take naps every day.

The law judge found that, although the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision" (Tr. 24).

Significantly, the law judge did not reject all of the plaintiff's subjective complaints. To the contrary, the law judge substantially credited the plaintiff's testimony, since she found the plaintiff was limited to performing a reduced range of light work (Tr. 23).

Furthermore, the law judge set forth cogent reasons for discounting the credibility of the plaintiff's subjective complaints. The law

18

judge included a detailed review of the medical evidence, and explained that the plaintiff's complaints of disabling limitations were not consistent with the objective medical findings. For example, the law judge discussed the plaintiff's medical condition after the plaintiff's stroke in April 2017 (Tr. 24–25):

> .... After spending five days in the hospital, he presented to an examination in a generally normal manner, demonstrating intact sensation, grip strength, and finger-to-nose coordination with normal speech, no pain or confusion, and a cheerful, calm, cooperative attitude, so he was discharged home with instructions to follow up with a neurologist and a Coumadin clinic (Exhibit 1F/14-16, 93-96) .... At a follow-up examination in May 2017, the claimant reported he was doing better with no acute complaints, having quit smoking and drinking in the interim (Exhibit 2F/29-31). Upon examination, he presented with intact neurological function, including full motor strength in his extremities and normal sensation, reflexes and speech (Id.). Coumadin clinic records from the same month indicate the claimant had not been compliant with his anticoagulation treatment, although his current INR was in the target range and he denied nausea and vomiting, contrary to his allegations about his medications causing nausea (Exhibit 1F/50-52) .... The claimant's INR remained stable on Warfarin through May 2018, although his levels fluctuated over the next few months due to alcohol consumption or missing doses soon before testing (Exhibits 5F/14 and 9F/65-83). In September

2018, his INR returned to therapeutic range, and around the same time, he denied having issues with pain or with his vision (Exhibit 9F/44, 55, 59). Examination records from 2018 generally indicate normal musculoskeletal and neurological function, with no indication of cognitive deficits or other stroke-related symptoms (Exhibits 10F/2-3 and 11F/22, 26-27).

The law judge added (Tr. 21–22):

[W]ith medication compliance and abstention from heavy drinking and cocaine, his kidney disease and cardiomyopathy resolved to an asymptomatic state through early 2019.... He then complained of shortness of breath during activity in January 2019, and an electrocardiogram indicated premature ventricular complexes, but an examination showed he was in no acute distress and he did not exhibit any labored breathing or other abnormal respiratory issues .... [T]here is insufficient evidence of clinically discernable, longitudinal signs or symptoms associated with the claimant's cardiomyopathy ....

The law judge also considered other circumstances in discounting the plaintiff's credibility. She explained (Tr. 25–26):

....[D]uring a thorough review of the record, I noted only a single complaint[] of side effects associated with the claimant's Warfarin medication. He reported such side effects to consultative examiner Dr. Martinez, but not to his treating physicians or the Coumadin lab. Moreover, the claimant continued to drive a vehicle, and contrary to his testimony, the

20

evidence heavily supports the conclusion that he continued to work as a security guard after his stroke, which indicates his impairments are not as intense or limiting as he alleged.  I therefore did not assign any additional restrictions in the residual functional capacity, at least with regard to the impairments discussed above. ... The objective record summarized above does not support any greater or additional limitations in the residual functional capacity finding, especially considering the inconsistencies between the claimant's allegations and the objective evidence.   He testified that he used a cane every time he left his home for the last two years, but the medical records do not reflect the consistent use of an assistive device.   Similarly, the examination reports do not provide objective confirmation of chronic fatigue or the other medication side effects the claimant described in his statements and testimony.  Most often, he denied symptoms of dizziness, nausea, and bowel issues, or he described them as mild or intermittent in nature. Finally, as previously discussed, the complete evidence of record available at the hearing level strongly suggest that the claimant continued to work throughout 2017, with higher earnings in the third and fourth quarters than he had in the first quarter before his stroke.   Considering the medical evidence does not reveal a downturn in the claimant's physical or mental functioning around the time he stopped working in January 2018, there is insufficient objective corroboration for a worsening in his condition that would correlate to his allegation of disability.

The law judge's explanation is reasonable, supported by substantial evidence, and adequate to discount the plaintiff's subjective complaints. See Heppell–Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 698–99 (11th Cir. 2006).

Thus, the law judge could reasonably find that the plaintiff's many normal examination findings were inconsistent with the plaintiff's subjective complaints of debilitating limitations. See 20 C.F.R. 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms … may have on your ability to work."); Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005) (normal findings on physical examination are relevant to whether the plaintiff's allegations of debilitating diabetes are credible).

Furthermore, the law judge appropriately considered the inconsistencies between the plaintiff's subjective complaints of disabling limitations and his activities of daily living. The law judge noted, in particular, that the plaintiff continued to drive and engaged in substantial gainful activity after his stroke in the third and fourth quarters of 2017 (including working some double shifts) (Tr. 25–26). See Wolfe v. Chater,

22

86 F.3d 1072, 1078 (11th Cir. 1996) (discrediting plaintiff's testimony partly due to the plaintiff's "ongoing advocation [sic] of mobile home washing" during the adjudicated period); <u>Cooper</u> v. <u>Commissioner of Social Security</u>, 521 Fed. Appx. 803, 808 (11th Cir. 2013) (The ALJ properly noted that Cooper's continuing employment at near-SGA levels may suggest that she could "do more work than [she] actually did."); <u>Moore</u> v. <u>Barnhart</u>, <u>supra</u>, 405 F.3d at 1212 (upholding a credibility determination where the law judge "relied on the inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity").

Moreover, the law judge could reasonably conclude that the plaintiff's lack of complaints to his doctors of medication side effects indicate that his allegations of debilitating side effects in connection with his disability application are not credible.  <u>See</u> <u>Swindle</u> v. <u>Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (Medication side effects did not present a significant problem because, with the exception of the plaintiff believing that one medication might be giving her headaches, she did not complain of side effects to her physicians.); <u>Turner</u> v. <u>Commissioner of Social Security</u>, 182 Fed. Appx. 946, 949 (11th Cir. 2006) (rejecting the plaintiff's argument that the law judge failed to consider her medication side effects as a separate non-

23

exertional impairment, noting that "the record includes no evidence that [she] consistently complained to her doctors of any side-effects").

The plaintiff argues that the law judge did not comply with the Eleventh Circuit's standard for analyzing subjective complaints (Doc. 28, pp. 10–11, 13). Specifically, he contends that the law judge "required clinical findings" to support the plaintiff's subjective complaints, which is erroneous because "pain alone can be disabling" (id., pp. 10–11). The plaintiff's argument is legally and factually baseless.

As a matter of law, allegations of pain and other subjective complaints are insufficient to support a finding of disability. 20 C.F.R. 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). Rather, the law judge is required to evaluate whether the subjective complaints "can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence … [showing] how … symptoms affect your ability to work." Id. Furthermore, it is clear from the law judge's detailed credibility explanation that her rejection of the plaintiff's complaints of disabling limitations is not solely due to a lack of "clinical findings" (see Tr. 21, 24–26).

24

The plaintiff also alleges that the law judge "failed to fully consider [the plaintiff's] testimony and allegations regarding the side effects of his medications and residual effects of his stroke" (Doc. 28, p. 11; see also id., p. 13). Specifically, he contends that the law judge stated inaccurately that the plaintiff "reported only one single complaint of side effects associated with his Warfarin medication," when he complained about them several times (id., p. 12). This argument is frivolous.

The law judge recounted from the plaintiff's hearing testimony and Social Security forms his reports of medication side effects (Tr. 24). The law judge's statement that the plaintiff reported side effects only once refers to the medical record, as she elaborated that the plaintiff alleged side effects to the consultative examiner, but not to his doctors or the Coumadin lab (see Tr. 25).

The plaintiff also disputes that he reported medication side effects to his doctor on only one occasion (Doc. 28, p. 12). In this regard, he identifies an October 2017 progress note in which the plaintiff reported feeling "a little fatigue and did not go in to work yesterday and today" (Tr. 628). There is no indication in the treatment note that the reported fatigue was a medication side effect (id.). Furthermore, the plaintiff's limited

25

examination was normal (Tr. 629), and he requested a work absence note for his employer (Tr. 628), thereby indicating that the plaintiff was well enough to return to work.[3]

Additionally, the plaintiff contends that the law judge should have found that the plaintiff's attempt to work after the stroke supports his credibility because it shows that he wanted to work (Doc. 28; p. 13). However, the law judge could reasonably find in this circumstance that the plaintiff's work record undermines his credibility, as the plaintiff stated that his work attempt consisted of working for one month in January 2018, whereas the law judge identified records indicating the plaintiff performed substantial gainful activity for the third and fourth quarters of 2017, during which he worked more than he did before his stroke (Tr. 20–21).[4]  Thus,

---

[3]In any event, remand is not warranted on this basis because it would be a harmless error.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (No remand for a harmless error because it would not change the decision.).  Thus, there is no reason to think that the law judge would have found the plaintiff's allegations of debilitating side effects credible based on a second report of a medication side effect in a record spanning three years.

[4]When the law judge questioned the plaintiff at the hearing about his 2017 earnings, the law judge found disingenuous the plaintiff's response that his job "was still paying him" while he was not working (Tr. 21).

the law judge could reasonably conclude from this evidence that the plaintiff's condition was not debilitating as he alleged.

The plaintiff also contends that the law judge failed to "take into account the combination of [his] impairments of cardiomyopathy, congestive heart failure and stage III chronic kidney disease" which "would have reasonably caused the fatigue [the plaintiff] complained of causing him to become dizzy and miss too many days of work" (Doc. 28, p. 14). The plaintiff does not even include in this argument a record citation supporting this argument (id.), and, therefore, it is properly considered forfeited in accordance with the court's Scheduling Order and Memorandum Requirements (see Doc. 18, p. 2) ("[D]iscrete challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards" and "[a]ny contention for which those requirements are not met will be deemed forfeited.").

Regardless, the contention is meritless because the law judge considered the combination of the plaintiff's impairments. Thus, the law judge recounted the plaintiff's allegations that he was "unable to work because of a combination of impairments," and she acknowledged that, in determining the plaintiff's residual functional capacity, she must consider all

27

of the plaintiff's impairments, "including impairments that are not severe" (Tr. 20, 24). This shows that the law judge considered the combination of impairments. See Wilson v. Barnhart, supra, 284 F.3d at 1225–26. Therefore, this conclusory contention fails.

In sum, the law judge provided adequate reasons for her credibility determination, and those reasons are supported by substantial evidence. Therefore, this court is not authorized to second guess that determination. See Celebrezze v. O'Brient, supra, 323 F.2d at 990. Thus, the plaintiff's quibbling with the law judge's credibility determination ignores the principle that review of administrative findings, including credibility determinations, under the substantial evidence test is highly deferential. Adefemi v. Ashcroft, supra, 386 F.3d at 1026–27; Buttram v. Social Security Administration Commissioner, 594 Fed. Appx. 569, 570 (11th Cir. 2014). Accordingly, the plaintiff's challenges to the law judge's credibility determination are rejected.

Finally, the plaintiff tacks on the one-sentence contention that the law judge "did not adequately account for ... [the plaintiff's] tinnitus and his allegations that he cannot see out of his right side, despite the fact that

Dr. Martinez opined [the plaintiff] could go back to his old job only if he had vision therapy" (Doc. 28, p. 14).

The plaintiff's contention that the law judge did not adequately account for his tinnitus is undeveloped and, therefore, it is properly considered forfeited in accordance with the court's Scheduling Order and Memorandum Requirements (see Doc. 18, p. 2). Furthermore, it is frivolous. As the law judge explained:

> [B]ased on an October 2016 audiology consultation and a complaint in early 2018, the claimant has sensorineural hearing loss and tinnitus in both ears, although he retains 96 percent speech discrimination on the right and 80 percent on the left .... Based on that evidence, I find the claimant can tolerate no more than a moderate noise level.

(Tr. 25–26; see also Tr. 320 (medical opinion that the hearing loss does not impact ordinary conditions of daily life, including ability to work)). The plaintiff does not identify a limitation that the law judge failed to include in the residual functional capacity due to this condition, much less cite objective evidence justifying an additional accommodation for his hearing impairment. Therefore, this argument is baseless.

29

Additionally, the plaintiff argues that the law judge did not adequately account for his eye impairment because "Dr. Martinez opined [the plaintiff] could go back to his old job only if he had vision therapy" (Doc. 28, p. 14). This contention is meritless.

The law judge found that the plaintiff's right homonymous hemianopsia was a severe impairment which could be accommodated by eliminating jobs that involve "climb[ing] ladders, ropes, or scaffolds and ... exposure to workplace hazards (Tr. 21, 25). In making this determination, the law judge acknowledged that consultative examiner Dr. Martinez recommended visual stimulation therapy and prism glasses (Tr. 25). She explained that no additional functional limitation was necessary because, despite the vision loss, the plaintiff was able to drive a car and work as a security guard, and the reviewing consultants agreed that the vision loss could be accommodated by avoiding hazards (Tr. 24, 27).

The plaintiff argues that the law judge did not adequately account for the plaintiff's eye impairment, mentioning Dr. Martinez's recommendation for vision therapy (Doc. 28, p. 14). However, "vision therapy" is not a functional limitation. Furthermore, the plaintiff does not identify a functional limitation that the law judge should have included in

30

the residual functional capacity, but did not. Therefore, the plaintiff does not show that the law judge failed to accommodate his eye impairment. Accordingly, this argument fails as well.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _13th_ day of September, 2021.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

31